UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| STANLEY TYRUS WEEMS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Nos. 2:11-cr-71-JRG-HBG |
| | ) | 2:13-cv-143-JRG |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

Before the Court now is Petitioner Stanley Tyrus Weems's pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 ("2255 Motion") [Doc. 87].[1] The government filed its response [Doc. 94], and Petitioner filed a reply [Doc. 105]. Petitioner has seven additional motions pending including: a motion requesting "the complete transcripts of all proceedings in this case" [Doc. 95]; a motion to show cause [Docs. 96]; a motion for a default judgment [Docs. 97]; a motion for an evidentiary hearing to "investigate if counsel was ineffective" [Doc. 98]; a motion for extension of time to reply to the United States's response to Petitioner's 2255 Motion [Doc. 99]; a motion for the appointment of counsel [Doc. 100]; and a motion to proceed in forma pauperis [Doc. 102].

For the reasons stated below, Petitioner's § 2255 motion [Doc. 87] will be **DENIED**. Petitioner's motion for evidentiary hearing will also be **DENIED** [Doc 98].

---

[1] All references to the record are in case no. 2:11-cr-71

The remainder of Petitioner's motions [Docs. 95, 96, 97, 99, 100, and 102] will be **DENIED** as moot.

I.  BACKGROUND

On or about July 21, 2011 the Greene County Sheriff's Office received a report from a seventeen year old minor child that the minor had been subjected to sexual abuse by the Petitioner in his home. [Presentencing Report ("PSR") ¶ 8]. The minor reported he had engaged in sexual intercourse with prostitutes acquired and paid for by the Petitioner [*Id.*]. The encounters between the minor and the prostitutes were observed and recorded [*Id.*]. The recordings were subsequently seized when the Greene County Sheriff's Office executed a search warrant at the Petitioner's home [*Id.* ¶ 9]. Among the items seized during the execution of the search warrant were video recordings (VHS), audio recordings, and cellular telephones [*Id.*]. The audio tapes seized from the Petitioner's home contained voices of the Petitioner, the minor child and various prostitutes, and depicted occasions of sexual intercourse between the minor and the prostitutes [*Id.*]. A cellular phone that was seized contained video and photographic files of the minor engaged in sexual acts [*Id.* ¶ 10]. The cellular phone also contained photographic files of another minor in sexually explicit poses [*Id.*]. In the videos, the Petitioner can be heard directing in the background [*Id.*].

On September 8, 2011, a special agent with the Federal Bureau of Investigation met with one of the prostitutes [*Id.* ¶ 11]. She admitted to having sex with both the Petitioner and the minor, but indicated that she was unaware of the minor's age until she

spoke with the Petitioner [*Id*.]. A recording of the conversation between the Petitioner and the prostitute reflects Petitioner admitting to lying about the minor's age so the prostitute would not refuse to have sex with him [*Id*.].

On September 13, 2011, a federal grand jury charged Petitioner with production of child pornography in violation of 18 U.S.C. § 2251(a); possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B); and sexual exploitation in violation of 18 U.S.C. § 2252A(a)(6) [Doc. 3].

On November 28, 2011, Petitioner pleaded guilty to producing child pornography pursuant to a plea agreement with the United States [Doc. 32]. As part of the plea agreement, the parties stipulated that a sentence of 180 months was appropriate punishment for the offense [*Id*. ¶ 2]. Petitioner acknowledged he had "read the indictment, discussed the charges and possible defenses with... counsel, and understood[] the crime(s) charged" [*Id*. ¶ 3]. Additionally, Petitioner stated he was pleading guilty because he was "in fact guilty" [*Id.*]. Petitioner agreed "not to file a direct appeal of [his] conviction(s) or sentence except . . . [in the case of] a sentence imposed above the sentencing guidelines range as determined by the district court" [*Id*. ¶ 14 (a)]. Petitioner also "voluntarily waive[d] [his] right to file any motions or pleadings pursuant to 28 U.S.C. § 2255 or to collaterally attack [his] conviction(s) and/or resulting sentence" except in cases "of ineffective assistance of counsel or prosecutorial misconduct not known to [Petitioner] by the time of the entry of judgment" [*Id*. ¶ 14 (b)].

3

On May 23, 2013, Petitioner filed a timely motion pursuant to 28 U.S.C. § 2255 [Doc. 87]. Over the course of the next several years, Petitioner filed a litany of additional motions, seven of which are currently before the court [Docs. 95, 96, 97, 98, 99, 100, and 102].

## II. STANDARD OF REVIEW AND RESOLUTION OF TIMELY CLAIMS

To obtain relief under 28 U.S.C. § 2255, a petitioner must demonstrate "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law . . . so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)). He "must clear a significantly higher hurdle than would exist on direct appeal" and establish a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

Petitioner articulates two grounds of collateral challenge [Doc. 87]: (1) Petitioner alleges constitutionally deficient assistance of counsel [*Id.* at 3], and (2) actual innocence [*Id.* at 6]. For the reasons explained below, neither warrants relief.

### A. Claim One: Ineffective Assistance of Counsel

A petitioner alleging ineffective assistance of counsel must satisfy the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1987). *See also, Huff v. United States*, 734 F.3d 600, 606 (6th Cir. 2013). First, the petitioner must establish, by identifying specific acts or omissions, that counsel's performance was deficient and that

4

counsel did not provide "reasonably effective assistance," *Id.*, as measured by "prevailing professional norms," *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). Counsel is presumed to have provided effective assistance, and the petitioner bears the burden of showing otherwise. *Mason v. Mitchell*, 320 F.3d 604, 616–17 (6th Cir. 2003); *see also Strickland*, 466 U.S. at 689 (a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action might be considered sound . . . strategy" (internal citation omitted)).

Second, the petitioner must demonstrate "a reasonable probability that, but for [counsel's acts or omissions], the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691; *see also Smith v. Robbins*, 528 U.S. 259, 285–86 (2000). If a petitioner fails to prove that he sustained prejudice, the Court need not decide whether counsel's performance was deficient. *See United States v. Hynes*, 467 F.3d 951, 970 (6th Cir. 2006) (holding that alleged "flaws" in trial counsel's representation did not warrant a new trial where the claims, even if true, did not demonstrate that the jury would have reached a different conclusion).

Petitioner asserts six separate theories of ineffective assistance, including allegations that trial counsel: (1) refused to interview witnesses suggested by the Petitioner [Doc. 88 p. 14]; (2) failed to investigate discovery supplied by the Government

5

[*Id.* p. 17]; (3) refused to prepare a defense on Petitioner's behalf [*Id.* p. 22]; (4) advised Petitioner to accept a plea that "statistically ensured he would die in prison" [*Id.* p. 24]; (5) refused to consider the plausibility of Petitioner's innocence [*Id.* p. 27]; and (6) failed to move to suppress evidence obtained pursuant to an unlawful search warrant [*Id.* p. 29].

### 1. Counsel's Refusal to Interview Witnesses Suggested by the Petitioner

Petitioner's first theory alleges his attorney deviated from professional norms when he failed to investigate potential defense witnesses identified by Petitioner [Doc 88 p. 14]. Petitioner asserts, despite being informed about potential defense witnesses who "were available to come forward on their own volition… regarding Mr. Weems activities and why he was innocent of manufacturing child pornography," counsel failed to make any attempt to interview the individuals for "substantial evidence… that proved [Petitioner] was innocent of the charges" [*Id.*]. Petitioner claims counsel's refusal to interview these witnesses was deficient performance that falls outside the range of professionally competent assistance [*Id.*].

The Court disagrees. While it is true counsel has a reasonable duty to make investigations into existing mitigating or exculpatory evidence, "when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless… failure to pursue those investigations may not later be challenged as unreasonable." *Strickland*, 466 U.S. at 691. Here, the Petitioner makes it clear the available witnesses only offered testimony that the victim, although seventeen at the time of the incident,

6

"lied to several people [regarding] his age such that it was common knowledge that [the victim] was eighteen years old" [Doc. 88 p. 15]. However, "knowledge of the victim's age is neither an element of the offense nor textually available as an affirmative defense." *United States v. Humphrey*, 608 F.3d 955, 962 (6th Cir. 2010) (*citing United States v. Malloy*, 568 F.3d 166, 171 (4th Cir. 2009)). Thus, a defense relying on the Petitioner's lack of knowledge regarding the victim's age would have failed as a matter of law. Because counsel's decision not to pursue any investigation of the suggested witnesses was reasonable, Petitioner cannot show counsel deviated from professional norms or afforded ineffective assistance of counsel on that basis.

The Court need not reach the question of whether any prejudice existed because Petitioner's insufficient showing of deficient performance obviates the need to do so. *See, Strickland*, 466 U.S. at 697 (finding "no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the [petitioner] makes an insufficient showing on one").

### 2. Counsel's Failure to Investigate Discovery Supplied by the Government

Petitioner's second theory of ineffective assistance claims counsel deviated from professional norms by failing to review the discovery provided by the Government before Petitioner's bond hearing. [Doc. 88 p. 17]. Included in the discovery was a taped conversation between the Petitioner and a prostitute in which Petitioner admits knowing the victim's true age [*Id*. p. 18]. Petitioner insists that proper interpretation of the recording would have demonstrated the "birth and depth of [the victim's] deception" and

7

proved his innocence [*Id.* pp. 19, 22]. Petitioner asserts that he was substantially prejudiced by counsel's failure to either investigate the recording or provide an opportunity for Petitioner to explain the details and timing of the offense [*Id.* pp. 21 - 22].

Even assuming counsel's failure to review the tape prior to the bond hearing amounted to a violation of his ethical obligations, Petitioner has not shown he sustained any prejudice as a result. Petitioner seems to be relying again on his mistaken belief that awareness of the victim's minority is an element of the offense at hand—that had Petitioner been allowed to explain the extent of the victim's lies regarding his age he would have been able to prove his innocence. However, production of child pornography under § 2251 only requires that the Petitioner "arrange for a minor to engage in sexually explicit conduct for the purpose of creating a visual depiction, and that there be a nexus to interstate commerce." *Humphrey*, 608 F.3d at 958. Even if counsel had reviewed the recording, interviewed the Petitioner, questioned the third party and presented each finding to the Court, the outcome would have still been the same because issues of Petitioner's knowledge regarding a victim's age or the victim's tendency to lie have no bearing on the elements of the charge. Because of this, Petitioner cannot establish he incurred prejudice as a result of the alleged deficient assistance.

### 3. Counsel's Refusal to Prepare a Defense

Petitioner alleges counsel deviated from the professional standard of care when he refused to prepare a defense on Petitioner's behalf [Doc. 88 p.22]. Petitioner again argues counsel should have raised the defense of Petitioner's lack of knowledge as to the

8

victim's age. [*Id.* p. 24] On this theory of ineffective assistance of counsel, the Court need not determine whether counsel deviated from professional norms because Petitioner's allegations fail for lack of prejudice.

When determining whether a failure to raise a defense has prejudiced a defendant, the Court must determine whether the defense would have been successful if it had been properly raised at trial. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985) ("the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial"). Because lack of knowledge regarding a victim's age is not a defense to the offense of producing child pornography, the Court finds that a defense based on Petitioner's lack of knowledge would have failed at trial if it had been raised. For that reason, the Petitioner has failed to demonstrate the kind of prejudice necessary to satisfy *Strickland.*

### 4. Counsel's Advice to Accept Plea

Petitioner's fourth theory of ineffective assistance of counsel alleges his attorney deviated from professional norms when he induced Petitioner, through misinformation and false promises, to accept a plea that "statistically ensured he would die in prison" [Doc. 88 p. 24 - 26].[2] Specifically, Petitioner contends counsel failed to properly inform him that a trial could have yielded, at best, "redemption, freedom and a reinstatement of his wealth and reputation," and at the worst, a sentence as long, or longer, than what he accepted in his plea agreement [*Id.* p. 25]. Petitioner seems to assert that had he had

---

[2]Petitioner, age 68, plead guilty pursuant to a plea agreement ensuring a sentence of 180 months. [Doc. 32] Petitioner claims that according to "Death in the United States 2011" NCHS data brief, no. 115, he will statistically die at age 76—seven years before his release date [Doc. 88 p. 24].

9

access to the foregoing information prior to his plea agreement, he would have chosen to go to trial.[3] Further, Petitioner alleges he was induced to plead guilty by counsel's false promise of a "sentencing outcome substantially different from the statutes and the facts" [*Id.* p. 26]. The Court finds no merit in these claims.

While "no procedural device for the taking of guilty pleas is so perfect in design and exercise as to warrant a *per se* rule rendering it 'uniformly invulnerable to subsequent challenge,'" *Blackledge v. Allison*, 431 U.S. 63, 73 (1977) (quoting *Fontaine v. United States*, 411 U.S. 213, 215 (1973)), "representations of the [petitioner], his lawyer, and the prosecutor at [the original plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceeding," *Id.* at 74.

Here, in his plea agreement, Petitioner was correctly advised of his sentence exposure for the offense of the production of child pornography in violation of § 2251 [Doc. 32 ¶ 1]. The plea agreement unambiguously outlines the sentencing range for the offense that would have been available to the Petitioner had he gone to trial [*Id*]. Petitioner was, in the alternative, also advised of the sentence he was guaranteed to receive on signing the plea agreement [*Id.* ¶ 2]. Petitioner acknowledged the terms of the plea and agreed "that a sentence of 180 months, including a lifetime term of supervised release [was] appropriate for disposition of this case" [*Id.* ¶ 7]. The Court reiterated the nature and possible consequences of the plea agreement prior to the entry of Petitioner's

---

[3] Petitioner states, "In this situation a trial is a viable alternative… [w]hen faced with a statistical death sentence [by plea agreement], a longer sentence [imposed in trial] seems immaterial" [Doc. 88 p. 25].

10

plea [Doc. 33]. In light of the foregoing, the Court finds Petitioner's claim—that he was not made aware of the differences in sentencing possibilities and thus unable to make a proper decision on whether to go to trial—incredible.

Further, because Petitioner acknowledged "that any and all other promises, representations, and statements whether made before, contemporaneous with, or after the [plea agreement], are null and void" [Doc. 32 ¶ 16], the Court can hardly accept Petitioner's claim that he was induced to plead guilty by counsel's alleged misadvice that the government intended to change existing rules regarding good time credits [Doc. 88 p. 25].

Because he cannot demonstrate the alleged misadvice of counsel caused him to plead guilty, Petitioner cannot establish he incurred prejudice as a result of the alleged deficient assistance.

### 5. Counsel's Refusal to Consider Plausibility of Petitioner's Innocence

Petitioner's next theory of ineffective assistance of counsel alleges he was prejudiced by counsel's decision not to consider the plausibility of his innocence [Doc. 88 p. 27 – 28]. The Court disagrees for two reasons.

First, an attorney is under no duty to believe in a client's innocence as a prerequisite to his representation of that client. Counsel's action, factual or not, of not considering Petitioner's innocence when deciding how best to proceed in his representation in no way rises to the level of ineffective assistance of counsel capable of satisfying either prong of the *Strickland* test.

11

Second, assuming that counsel did not consider the plausibility of Petitioner's innocence, Petitioner has still failed to show that counsel's belief somehow interfered with his ability to provide competent representation. Attorneys are ethically bound to diligently and competently represent each client and act with the utmost loyalty to their client's interests. *See generally*, Model Rules of Prof'l Responsibility R. 1.1, 1.3 (2016). Absent any real showing that counsel's personal beliefs conflicted with Petitioner's interest to such a degree that he was truly prejudiced, this Court finds no merit in Petitioner's fifth theory of ineffective assistance of counsel.

### 6. Counsel's Failure to Move to Suppress Evidence

Petitioner's final theory of ineffective assistance—counsel's failure to move to suppress evidence obtained through the execution of a "fundamentally illegal search warrant" [Doc. 88 p. 30]—fails.

The failure to file a suppression motion may be ineffective assistance of counsel but it is not ineffective assistance per se. In order to meet his burden of proving ineffective assistance of counsel for not filing a motion to suppress, the Petitioner must, in addition to satisfying *Strickland*, "also prove that his Fourth Amendment claim is meritorious." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). Counsel cannot be faulted for failing to file a motion which would have failed. *Brown v. McKee*, 231 F. App'x 469 (6th Cir. 2007). This theory thus turns on the question of whether Petitioner can prove that a motion to suppress the evidence obtained during execution of the search warrant would have been successful.

12

In making his argument, Petitioner seems to assert two main claims. First, Petitioner argues counsel should have filed a suppression motion because the search warrant executed in his home was invalid due to insufficient probable cause [Doc 88 pp. 31 -34]. Second, Petitioner claims counsel should have moved to suppress the evidence obtained during the search because the search exceeded the scope of the already invalid warrant [Doc 88 pp. 35 -39].

The Government responds that counsel was not ineffective, because a suppression motion regarding the validity of the warrant would have been meritless since Petitioner "has not proven that the warrant was, in fact, invalid" [Doc 94 p. 9].

The Court agrees with the Government. The Petitioner has the burden to establish that he is entitled to relief. See *Bevil v. United States*, No. 2:06-CR-52, 2010 WL 3239276, at *3 (Aug. 16, 2010) (recognizing that the "burden of proving ineffective assistance of counsel is on the petitioner"); see also *Douglas v. United States*, No. 2:05-cr-07, 2009 WL 2043882 at *3 (E.D. Tenn. July 2, 2009) (stating that "[w]hen a defendant files a § 2255 motion, he must set forth facts which entitle him to relief"). Petitioner has failed to establish the warrant at issue was not valid, nor did he set forth any evidence, short of his bald assertions, that the search of his home actually exceeded the scope of the warrant issued. Under these circumstances, the Court cannot find any basis upon which a motion to suppress would have been successful and, as a result, can find no specific act or omission that would render counsel's performance deficient under *Strickland*. 466 U.S. 687.

13

## B. Claim Two: Actual Innocence

Petitioner's second ground of collateral attack claims that newly discovered evidence will prove he is actually innocent of the charged offense [Doc 88. P. 41].

A petitioner can substantiate a claim of actual innocence by showing that, "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Phillips v. United States*, 734 F.3d 573, 582 (6th Cir. 2013) (quoting *Wooten v. Cauley*, 677 F.3d 303, 307-08 (6th Cir. 2012)). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 316 (1995)).

Petitioner now offers evidence, a single affidavit from Larry Steven Schism, that provides the Court with testimony alleging the victim and his mother conspired "to deceive and defraud [Petitioner] with the intent to illegally seize [his] moneys and properties" [Doc 88 p. 41]. Petitioner asserts that this new evidence will prove that he is innocent [*Id.*]. Additionally, Petitioner argues that the evidence satisfies the four part standard set forth by *United States v. O'Dell*, warranting a new trial based on newly discovered evidence [*Id.* at 42]. 805 F.2d 637, 640 (6th Cir. 1986).

The Court disagrees. Upon review of the record, the Court finds nothing in Mr. Schism's affidavit that points to the Petitioner's innocence. Mr. Schism's testimony only furthers the Petitioner's claim that the victim lied about his age, which is irrelevant to the

14

charged offense. Further, the Court finds Mr. Schism's affidavit is insufficient to warrant a new trial. In *United States v. O'Dell*, the Court held that the following four elements must be established before a new trial will be granted: "(1) the new evidence was discovered after the trial;(2) the evidence could not have been discovered earlier with due diligence;(3) the evidence is material and not merely cumulative or impeaching; and (4) the evidence would likely produce an acquittal." *Id.* A petitioner must satisfy all four elements. *Id.* at 641. Here, the Court finds it difficult to find any element where the Petitioner prevails, but believes Mr. Schism's affidavit is particularly insufficient to satisfy elements three and four. Specifically, the Court finds that because Mr. Schism's affidavit focuses primarily on the victim's alleged attempt to defraud the Petitioner out of his money, it is not material to the offense charged and is thus insufficient to satisfy the third element of *O'Dell*. Moreover, this evidence is not likely to result in an acquittal of the Petitioner, as is required by element four, because, as previously stated, the victim's alleged attempt to defraud the Petitioner is not a defense to the offense of producing child pornography. For the foregoing reasons, the Court finds Petitioner's second ground for collateral attack fails as a matter of law.

### III. RESOLUTION OF PETITIONER'S NON-DISPOSITIVE MOTION FOR AN EVIDENTIARY HEARING

Under Rule 8 of the Rules Governing § 2255 Proceedings in United States District Courts (the "§ 2255 Rules"), the Court must determine, based on a review of the answer and the record, whether an evidentiary hearing is required. *Pola v. United States*, 778 F.3d 525, 532 (6th Cir. 2015) (quoting *Huff v. United States*, 734 F.3d 600, 607 (6th Cir.

2013)). While the burden to show an entitlement to an evidentiary hearing is relatively light, a petitioner must offer more than mere assertions of innocence. *Valentine v. United States*, 488 F.3d 325, 334 (6th Cir. 2007) (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)). For example, a petitioner is entitled to an evidentiary hearing where he presents "a factual narrative of the events that is neither contradicted by the record nor inherently incredible and the government offers nothing more than contrary representations to contradict it." *Huff*, 734 F.3d at 707 (internal quotation marks omitted) (quoting *Valentine*, 488 F.3d at 334); *see also Pola*, 778 F.3d at 534 (noting an evidentiary hearing would be required where a petitioner's and counsel's affidavits directly contradicted each other regarding whether petitioner had requested counsel to file a notice of appeal). In contrast, an evidentiary hearing is not required where the record conclusively shows that the petitioner is entitled to no relief, such as where "allegations . . . [constitute] conclusions rather than statements of facts." *Huff*, 734 F.3d at 607 (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)).

Petitioner asserts that an evidentiary hearing "is necessary to investigate if counsel was ineffective therein making Petitioner's acceptance of the plea agreement not knowing, intelligent, and voluntary" [Doc. 98]. For reasons discussed in the preceding sections, the Court finds that Petitioner has not identified any material factual dispute requiring resolution by way of an evidentiary hearing and that the record conclusively precludes collateral relief. Petitioner's motion for evidentiary hearing [Doc. 98] will be **DENIED** accordingly.

16

## IV. REMAINDER OF PETITIONER'S PENDING MOTIONS

In light of the Court's resolution of the foregoing motions [Doc. 87, 98], Petitioner's remaining motions for "the complete transcripts of all proceedings in this case" [Doc. 95]; to show cause [Docs. 96]; for a default judgment [Docs. 97]; for extension of time to reply to the United States's response [Doc. 99]; for the appointment of counsel [Doc. 100]; and to proceed in forma pauperis [Doc. 102], all of which hinge on existence of a valid underlying claims for collateral relief, will be **DENIED as moot**.

## V. CONCLUSION

Because the claims presented in Petitioner's motion for collateral relief [Doc. 87] lack merit, the Court finds Petitioner is not entitled to relief pursuant to 28 U.S.C. § 2255. Accordingly, a judgment will be entered **DENYING** the motion [Doc. 87] and the action will be **DISMISSED WITH PREJUDICE**. Petitioner's motion for an evidentiary hearing [Doc. 98] is also **DENIED**. Petitioner's remaining motions [Docs. 95, 96, 97, 99, 100, and 102] will be **DENIED** as moot.

**IT IS SO ORDERED.**

## VI. CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals disapproves of the issuance of

Case 2:11-cr-00071-JRG   Document 106   Filed 06/20/16   Page 17 of 18   PageID #: 529

blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F. 3d 466 (6th Cir. 2001). The District Court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id*. at 467. Each issue must be considered under the standard set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473, 120 S. Ct. 1595 (2000). *Id.*

Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." After reviewing each of Petitioner's claims, the Court finds that reasonable jurists could not conclude that petitioner's claims are adequate to deserve further review. Because petitioner has failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue.

An appropriate order shall enter.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE
